IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Michael J. Marshall, Jr.,<br><br>    Plaintiff,<br>vs.<br><br>Mark Anthony Brewing, Inc.,<br><br>    Defendant. | Civil Action No. 3:24-cv-877-CMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 23)** |

Through this action, Plaintiff Michael J. Marshall, Jr. ("Plaintiff" or "Marshall") seeks recovery from Defendant Mark Anthony Brewing, Inc. ("Defendant"), for alleged discrimination and retaliation during his employment, in violation of the Americans with Disabilities Act of 1990 ("ADA"). ECF No. 1-1 (Complaint). The matter is before the court on Defendant's motion for summary judgment. ECF No. 23. Plaintiff filed a response in opposition. ECF No. 29. Defendant replied. ECF No. 31.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B), DSC, this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On July 1, 2025, the Magistrate Judge issued a Report recommending Defendant's motion be granted. ECF No. 33. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections (ECF No. 39), and Defendant replied (ECF No. 40).

1. **Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the

court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court is only required to review for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

## 2. Factual Background[1]

Plaintiff began his employment with Defendant in January 2022. ECF No. 29-1. He had favorable performance reviews during his tenure. ECF No. 29-3. In May 2022, he was diagnosed with gout, posterior tibial tendinitis, and synovitis. ECF Nos. 23-7 at 28 (Marshall dep.); 29-4 (short-term disability form). He was approved for short-term disability leave from June 2022 to August 2022. ECF No. 29-5.

Defendant's Employee Handbook describes benefits of Paid Time Off and Sick Leave, which employees may use after successful completion of a 90-day introductory period. ECF No. 29-2 at 17-18. In addition to paid leave, Defendant has a written "no-fault" Attendance Policy in

---

[1] The facts are taken in the light most favorable to the non-moving party, Plaintiff.

place for unpaid, unplanned absences. ECF No. 29-6 at 2. Exempt from this policy are "absences qualifying under the Family Medical Leave Act, company policy (including vacation, bereavement, jury duty, approved personal leave, short-term disability, etc.), or by any other federal, state or local law," which do not count toward discipline nor are considered an unplanned absence. *Id.* at 1. The policy notes absences and tardies must be timely reported to the employee's immediate supervisor as soon as the employee is aware he will be tardy or absent. Proper notice is defined as notifying the employee's supervisor by phone at least 30 minutes prior to the start of the shift. *Id.* at 2. Direct contact is required to the employee's supervisor or an appropriate member of supervision in order to constitute proper notice. Failure to provide proper notice results in a "No Call No Show" absence, which is met with "more aggressive discipline due to the gravity of the offense." *Id.* at 3. The "What Happens" portion of the policy provides "a point will be documented for the absence in addition, the following disciplinary measures will occur: If you are considered a No Call No Show per this policy, you will be placed on a Written Warning." *Id.* (errors in original).

| No Call No Show | Disciplinary Action |
|---|---|
| 1st occurrence | Written Warning |
| 2nd occurrence within a rolling 12 months | Final Written Warning and three (3) day unpaid suspension |
| 3rd occurrence within a rolling 12 months | Termination of Employment |
| 2 Consecutive No Call No Show Days | Termination of Employment |

The policy notes discipline for unplanned absences will be assessed when absenteeism and/or tardiness becomes abusive and/or excessive, and points will be counted on a rolling 12-

3

month calendar. *Id.* at 3. All disciplinary steps are to be assessed by the immediate supervisor of the employee and human resources. "Exceptions to discipline may be made by management in instances where extenuating circumstances exist and/or when the law dictates that certain absences be considered excused. Such absences must be supported with documentation satisfactory to the Company and received timely." *Id.* at 3.

Points are assigned as indicated below:

| Point Description | Number of Points |
| --- | --- |
| Unpaid absence less than ½ scheduled shift | 0.5 Point |
| Unpaid absence greater than ½ scheduled shift | 1 Point |
| Consecutive unpaid absences for the same illness/injury (documentation may be required) – all other consecutive absences are a point per absence | 1 Point |

| Number of Points Accumulated in a rolling 12- months | Disciplinary Action |
| --- | --- |
| 2 Points | Verbal Written Warning |
| 3.5 Points | Written Warning |
| 5 Points | Final Written Warning and three (3) day unpaid suspension |
| 6 or more Points Or receiving a 2nd Final Warning within 12 months of the 1st Final Warning. | Termination of Employment |

*Id.* The effective date of the policy was July 1, 2020.

4

On September 22, 2022, Plaintiff was assessed a No Call No Show[2] absence after he failed to report to work for his scheduled shift at 6:00am on September 16. ECF No. 29-8 at 3. Plaintiff left his shift early on September 13, 2022, due to pain, and was not scheduled to work again until September 16. After his pain did not abate, Plaintiff contacted his doctor on September 15 requesting an appointment. The doctor's office returned his call after hours and left a voicemail the evening of September 15, advising Plaintiff to report to the office for an appointment when it opened at 7:00am on September 16. ECF No. 23-7 at 54-57. Although the record is somewhat unclear, Plaintiff appears to assert he did not listen to the message until approximately 5:30am on September 16, 30 minutes prior to the start of his assigned shift. ECF No. 29-8 at 4; ECF No. 23-7 at 56-63. Plaintiff also claims he did not have contact information for his new supervisor to contact him prior to the start of his shift. ECF No. 29-8 at 3.[3]

Plaintiff's wife drove him to the doctor's appointment at 7:00am on September 16. ECF No. 23-7 at 65. It is undisputed Plaintiff did not attempt to call his supervisor, or otherwise contact any supervisory employee for Defendant, to notify them he would not be in at the start of his shift at 6:00am. *Id.*; ECF No. 29-8. Plaintiff testified at deposition he was not planning on being absent the entire day and intended to go to work after his appointment, but his physician "put [him] out" on short-term disability beginning September 16 due to his elevated uric acid levels. ECF No. 23-

---

[2] A No Call No Show absence is sometimes referred to in the record as "NCNS."

[3] Ernest Donaldson became Plaintiff's supervisor on September 13. Prior to that date, his supervisor was Cliffton Bates, who was on vacation on September 16. ECF No. 29-8 at 3.

5

7 at 63-66.[4] Plaintiff then contacted Ms. Danielle Diaz, Director of People Operations for Defendant at the time, and who had handled Plaintiff's previous term on short-term disability, at 10:30am, to inform her he would not be at work that day and was seeking to be placed on short-term disability. ECF Nos. 29-8; 23-5 at 12.

Prior to September 16, 2022, Plaintiff had been assessed a total of three and a half points under Defendant's Attendance Policy: one point for an absence April 5, 2022; one point for an absence May 1, 2022; one point for absences September 1-7, 2022, and ½ point for leaving early on September 13, 2022. ECF No. 29-7 at 3.[5] He was then assessed 3.5 points for the No Call No Show on September 16, 2022, which brought his total points up to seven. *Id.* He was terminated by email dated September 22, 2022, effective September 16, based on the Attendance Policy stating the disciplinary action after an employee accumulated six or more attendance points in a rolling 12-month period is termination. *Id.*[6]

---

[4] Plaintiff acknowledged later in his deposition a doctor cannot approve short-term disability leave, that is the function of the administrator of such leave. For Defendant, that administrator is Unum, and that entity would approve or deny a short-term disability claim. *Id.* at 85. Plaintiff's physician signed an "out of work excuse" for September 16, 2022 – November 2, 2022. ECF No. 29-10.

[5] According to an email from Ms. Klein on September 23, 2022, Plaintiff was issued a "Verbal Written Warning" on August 9, 2022, for the two attendance points assessed in April and May.

[6] In response to the termination email, Plaintiff requested "itemization of points determining my termination." ECF No. 29-7 at 4. He also inquired "when the points amount was changed" and "when the employees was notified of the changes." *Id.*

### 3. **The Instant Lawsuit**

This action was removed to this court on February 20, 2024. ECF No. 1. The Complaint alleges discrimination and retaliation in violation of the ADA. ECF No. 1-1.

Defendant sought summary judgment on both causes of action. ECF No. 23. After briefing, the Magistrate Judge recommends granting summary judgment in full, finding Defendant proffered a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff failed to demonstrate this reason was a pretext for discrimination or retaliation. ECF No. 33 at 9.

Plaintiff filed objections to the Report, asserting the Magistrate Judge improperly resolved disputed issues of fact and credibility concerning the application of Defendant's Attendance Policy. ECF No. 39 at 4. He contends the Report disregards his "sworn explanation for his absence," and that he acted in good faith under medical emergency, so his absence was not a willful policy violation. *Id.* at 6-7.[7] Plaintiff argues Defendant's submitted declaration stating other employees were assessed 3.5 points for No Call No Show absences was not proper evidence regarding comparators or the operation of the Attendance Policy. *Id.* at 7. In addition, he submits five pieces of circumstantial evidence of pretext, but claims the Report only considered them in isolation, not collectively. Regarding the Attendance Policy, Plaintiff asserts the unwritten practice of assessing 3.5 points reflects a "manufactured rationale to support a termination decision already made," or that it was not applied fairly to Plaintiff. *Id.* at 11. Finally, Plaintiff contends

---

[7] The court notes the applicable Attendance Policy, for unpaid absences, is based on the "no-fault" concept and does not require "willful" violations. ECF No. 29-6.

the Report failed to address the close timing between Plaintiff's protected activity, requesting disability-related leave, and his termination. *Id.*

Defendant replied to Plaintiff's objections. ECF No. 40. It submits Plaintiff has no evidence Defendant ever treated an employee without a disability differently than him under similar circumstances, which is fatal to his claims. ECF No. 40 at 2. It also disputes Plaintiff's argument regarding the comparator employees, asserting Plaintiff did not request such information in discovery, and contending the declaration is admissible for its intended purpose. Finally, it asserts the "temporal proximity" argument fails because the alleged protected activity occurred after his No Call No Show absence from work that formed the basis of his termination.

4. **Discussion**

   a. *ADA Discrimination*

The Magistrate Judge determined even if Plaintiff could show a *prima facie* case of discrimination, Defendant had a legitimate, non-discriminatory reason for terminating him, and Plaintiff did not put forth evidence of pretext for discrimination. ECF No. 33 at 3. Defendant contends it terminated Plaintiff's employment because he received seven attendance points under the unpaid Attendance Policy, which provided the disciplinary action once an employee receives six or more points in a rolling 12-month period is "termination of employment." ECF No. 29-6 at 4. Plaintiff asserts the Report improperly resolved disputed issues of fact regarding Defendant's Attendance Policy.

The Magistrate Judge found Defendant produced a legitimate, non-discriminatory reason for terminating Plaintiff when he reached six or more attendance points per the policy. When

8

Defendant came forward with a legitimate, non-discriminatory justification for its allegedly discriminatory action, Plaintiff then had to prove by a preponderance of the evidence the neutral reason offered by Defendant was a pretext for discrimination. *See Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 379-80 (4th Cir. 2022). As evidence of pretext, Plaintiff asks the court to consider the following circumstances: the unwritten attendance rule conflicted with the version in the Employee Handbook; there was conflicting evidence whether the 3.5 point rule was communicated to Plaintiff; Defendant assessed the number of points required to justify termination based on a medical excused absence he immediately reported; termination occurred just days after Plaintiff informed Defendant of his doctor-directed disability leave; and Defendant's comparator evidence is inadmissible, was not produced in discovery, and was "not subject to adversarial testing." ECF No. 39 at 9.

The court finds Plaintiff has raised genuine issues of material fact regarding the application of the Attendance Policy and the timing of his termination. When considered together, Plaintiff's evidence of pretext is sufficient to survive summary judgment.

First, Plaintiff argues Defendant applied a revised, unwritten policy to assess 3.5 points for a No Call No Show absence, instead of the one point the written Attendance Policy advised would be assessed. Although Defendant introduced evidence via deposition and declaration the written policy was verbally amended and all employees who had No Call No Show absences were assessed 3.5 points, Plaintiff testified at deposition he was never informed of a rule contrary to the written Attendance Policy and had no reason to believe a No Call No Show would put his job in jeopardy.

9

Regina Klein, People Operations Partner for Defendant, submitted a declaration in support of summary judgment in which she stated the first occurrence of a No Call No Show absence "results in a written warning which equates to 3.5 points." ECF No. 23-3 at ¶ 7. She also noted the Company's Attendance Policy is reviewed during every new employee orientation and "employees are informed that a NCNS will result in 3.5 attendance points." *Id.* at ¶ 8. In her deposition, Ms. Klein testified similarly. She noted No Call No Shows are assessed 3.5 points rather than one point as would be received if an employee called out and was absent. ECF No. 23-6 at 25. She acknowledged the policy states "a point" will be documented, not 3.5 points, but she explained a No Call No Show equals a Written Warning, which is 3.5 points. *Id.* She testified the policy has "consistently been applied in Columbia since I've started is that a no-call/no-show equals 3.5 points." *Id.* at 26. She explained it has "always been applied that way for every person." *Id.* Ms. Diaz, Vice President of People Operations for Defendant, agreed, noting "if you see first occurrence, it says written warning . . . a written warning equals 3.5 points. So for no call/no shows, they were consistently -- we were consistently applying 3.5 points for every no-call/no-show." ECF No. 23-5 at 28. Ms. Diaz acknowledged the policy says "a point will be documented for the absence," but explained "with all the no-call/no-shows, we needed to be a little more aggressive like this policy said. So at that time, when we made the option to, right in August, to move forward, applying three and a half points . . . and that's exactly what we did from that early August date" *Id.* at 29. Defendant asserts it began applying the higher penalty in August of 2021, prior to Plaintiff's hiring, and employees hired after August 2021 were informed of the 3.5-point policy during orientation. *See* ECF No. 23-5 at 29-30, 47 (Diaz dep.).

However, Plaintiff testified at deposition he was not told he would receive 3.5 points for a No Call No Show absence. ECF No. 23-7 at 107. He noted the Attendance Policy states a point will be assessed for a No Call No Show, and does not state anywhere that 3.5 points will be assessed. *Id.* at 106. Further, Plaintiff testified he signed a document entitled "Summary Acknowledgement" at orientation recognizing he received the Employee Handbook, code of conduct, no-fault Attendance Policy, sick time policy, and paid time off policy. *Id.* at 41.[8] This included the written Attendance Policy that assessed "a point" for a No Call No Show, and did not include any amendments or references to Defendant's claimed verbal policy of 3.5 points. Plaintiff testified he believed in the worst-case scenario, he would receive one point on his attendance record for a No Call No Show. ECF No. 23-7 at 109.

On September 16, 2022, Defendant considered Plaintiff a No Call No Show after he failed to inform his supervisor he would be tardy or absent for his 6:00am shift due to a 7:00am doctor's appointment for his gout flare.[9] When he contacted Ms. Diaz regarding his doctor's opinion he should go on short-term disability at approximately 10:30am that day, she questioned whether he had informed his supervisor prior to the start of his shift he would not be present. ECF No. 29-8 at

---

[8] In emails communicating his termination, Ms. Klein referred to this Acknowledgement Form, noting Plaintiff acknowledged "you read and understood the attendance policy." ECF No. 29-7 at 3.

[9] When asked why he didn't contact anyone prior to his appointment, Plaintiff testified at deposition that because of the pain, he "wasn't really thinking about nothing but getting to the doctor as fast as I could." ECF No. 23-7 at 65.

11

3. He conceded he did not because he didn't have his new supervisor's phone number, and she informed him this would be considered a No Call No Show, and "would be accessed under the attendance policy." *Id.* at 3-4 (error in original). Ms. Diaz included Ms. Klein on her email on September 16, and asked Ms. Klein to inform Plaintiff where he stood in terms of attendance points after the No Call No Show, when she returned to the office the following Monday. *Id.* at 4. On September 17, Plaintiff texted Ms. Klein that his doctor had "put [him] out on disability starting yesterday Friday [September] 16," and he had contacted Unum and started a claim as of the 16th. ECF No. 29-9 at 2-3. On September 19, Plaintiff's doctor faxed Ms. Klein a note stating Plaintiff could not work from September 16 to November 2, 2022. ECF No. 29-10 at 3. On September 22, Plaintiff was advised because he had already accrued 3.5 attendance points prior to September 16, and was assessed 3.5 points for the No Call No Show for that day, he was terminated as he had reached a total of 7 points. ECF No. 29-7.[10]

The court observes a disagreement between the parties as to whether Defendant's written Attendance Policy assessing one point per No Call No Show absence, applied to Plaintiff's absence on September 16, 2022, or whether a 3.5-point penalty applied. The Magistrate Judge found it undisputed the 3.5-point penalty applied and required mandatory termination. This court, however, finds disputed issues of material fact concerning application of 3.5 points to Plaintiff's No Call No Show absence. First, Plaintiff disputed the existence, consistency, and communication of the

---

[10] Although Ms. Klein sent Plaintiff's termination letter on September 22, 2022, he was terminated effective September 16. *Id.* at 2.

unwritten policy. ECF No. 23-7 at 106-07 (Plaintiff dep.). Plaintiff specifically denied being advised of such a policy during orientation, contrary to the statements of Ms. Diaz and Ms. Klein. *See* ECF No. 23-7 at 107 vs. ECF Nos. 23-5 at 30, 47; 23-6 at 42. Second, the written policy did not provide for termination in the event of a first No Call No Show. Rather, it provided for a written warning. There is no evidence Plaintiff received a written warning after the September 16 No Call No Show, his first.[11]

**What happens**

**No Call No Show** absences are met with more aggressive discipline due to the gravity of the offense. A point will be documented for the absence in addition, the following disciplinary measures will occur:

If you are considered a No Call No Show per this policy, you will be placed on a Written Warning. If within a twelve (12) month period from receiving the Written Warning you are a No Call No Show, you will be placed on a Final Written Warning and suspended for three (3) days. If within twelve (12) months of receiving the Final Written Warning you are considered a No Call No Show, your employment will be terminated. Team members that are considered No Call No Show two (2) consecutive days will be determined to have resigned their position with the Company.

| No Call No Show | Disciplinary Action |
|---|---|
| 1st occurrence | Written Warning |
| 2nd occurrence within a rolling 12 months | Final Written Warning and three (3) day unpaid suspension |
| 3rd occurrence within a rolling 12 months | Termination of Employment |
| 2 Consecutive No Call No Show Days | Termination of Employment |

ECF No. 29-6 at 3.

---

[11] Ms. Klein's email of September 23, 2022, states "The policy also states that the first occurrence of a No Call No Show has a disciplinary action of a Written Warning, and a Written Warning equates to 3.5 points." ECF No. 29-7 at 3. The difficulty with this position is twofold. First, the policy specifically called for "a point" to be documented for a No Call No Show, in addition to the disciplinary action set forth in the chart. Second, there is no evidence a written warning was issued to Plaintiff following his first No Call No Show.

13

Third, even if Defendant was following an unwritten change to the No Call No Show policy of applying 3.5 points to the first such incident, termination was not mandatory. Absences qualifying under short-term disability or by law did not "count toward discipline" and were not considered unplanned absences. ECF No. 29-6 at 2. The policy also provided "[e]xceptions to discpline may be made by management in instances where extenuating circumstances exist and/or when the law dictates that certain absences be considered excused. Such absences must be supported with documentation satisfactory to the Company and received timely." *Id.* at 3. Yet Ms. Klein testified at deposition receipt of "six or more points . . . would trigger termination of employment." ECF No. 23-6 at 22. Similarly, Ms. Diaz stated "six or more points would result in termination." ECF No. 23-5 at 25. However, she also agreed the chart shows "the action that *could* happen when you've accumulated the number of points that are in the left side of this chart." *Id.* (emphasis added).

Both Ms. Diaz and Ms. Klein testified they did not have discussions about Plaintiff's termination before it was effectuated, and it does not appear his supervisor was involved in the assessment of points, as per the Attendance Policy. *See* ECF No. 29-6 at 3 ("All disciplinary steps will be assessed by the immediate supervisor and human resources."); *id.* at 44 ("Q. Did you have any discussions with Ms. Klein or anyone else about terminating Mr. Marshall's employment? A: I don't believe so. Those were straighforward . . . But as far as it being – needing a ton of approval, it was straightforward with the attendance policy."); ECF No. 23-6 at 47 ("Q. Did you have any discussions with Ms. Diaz about terminating Mr. Marshall's employment? A. I don't specifically

14

remember. I mean it was pretty standard. I don't typically go to my director when I'm terminating people if its for an attendance reason.").[12]

Defendant claims it applied the unwritten 3.5-point penalty to all employees with No Call No Show absences. In other words, Defendant asserts there was no different treatment between Plaintiff, an employee with a disability, and employees without disabilities. Ms. Klein testified this "is the way that the policy has consistently been applied in Columbia since I've started is that a no-call/no-show equals 3.5 points. . . .[The policy] also states that [NCNS] is equal to a written warning, and that's the way we have always applied it. Is that a no-call/no show is three and a half points . . . All I can say is that it's always been applied that way for every person." ECF No. 23-6 at 26. Ms. Diaz explained 3.5 points had been assessed for all No Call No Show absences since August 2021: "Once we applied three and a half points for a no-call/no-show, that is something that you could go back and pull records and you will consistently see everyone who had a no-call/no-show was applied three and a half points." *Id*. at 30; 47 ("3.5 points were consistently applied. It was something that we did consistently. And it wasn't a surprise. We talked about it in orientation.").

In addition to deposition testimony, Ms. Klein's declaration included a paragraph discussing limited comparator evidence. The declaration provided that nine other employees were assessed 3.5 points for a No Call No Show between April 2022 and May 2023, four of whom were

---

[12] Both the lack of written warning and failure to consult Plaintiff's immediate supervisor, along with the assessment of 3.5 points for a No Call No Show, demonstrate Defendant may not have followed its own written policy, despite holding Defendant to it.

subsequently terminated for accruing more than six points. ECF No. 23-3 at 4.[13] However, neither the declaration nor the depositions identify these other employees. And although Defendant submits four of the nine employees assessed 3.5 points for a No Call No Show were terminated for accruing more than six attendance points, no details have been provided as to the circumstances of termination, or whether any of the five not terminated were granted an exemption or exception. *See* ECF No. 23-3 at 4.

Next, Plaintiff contends the Attendance Policy provided that absences related to short term disability or other qualifying leave "do not count toward discipline nor are considered an unpaid absence." ECF No. 29-6 at 2. Plaintiff has produced evidence his physician wrote a work excuse for Plaintiff's absences starting September 16, 2022, which was communicated to Defendant prior to Plaintiff's termination. ECF No. 29-10. Further, Plaintiff contacted Unum and initiated a short-term disability claim immediately after his doctor's appointment on September 16, and notified both Ms. Diaz and Ms. Klein that he was doing so. ECF No. 29-8 at 2 ("[M]y Dr. is putting me back out on disability do to my foot issue again and I'm in the process of contacting unim as we speak.") (errors in original).

---

[13] Plaintiff objects to the use of this information from the declaration, asserting it violates Fed. R. Civ. P. 56(c). ECF No. 39 at 7-8. Pursuant to Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Although affidavits sworn by employees who are familiar with the record-keeping practices of a business can constitute appropriate evidence, affidavits submitted in support of a motion may not be conclusory or based upon hearsay. *See Nader v. Blair*, 549 F.3d 953, 963 4th Cir. 2008); *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996).

16

The court has considered Plaintiff's evidence of pretext separately and collectively, and finds several genuine issues of material fact exist as to Defendant's application of the Attendance Policy: whether one point or 3.5 points are routinely applied to all No Call No Show absences; whether such a change in policy was communicated to Plaintiff and other new employees who signed an acknowledgement form of the written policy; whether termination was applied with input from an employee's supervisor and consistently after reaching six or more points; and whether exceptions to the policy were allowed. In addition, the court has determined an issue of fact exists as to whether Plaintiff should have been assessed any points under the policy, or the absence should have been excused and not counted toward discipline nor considered an unplanned absence per company policy for short-term disability. For these reasons, the court finds Defendant is not entitled to summary judgment on the discrimination claim.

### b. *ADA Retaliation*

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001). Under the burden-shifting method of proof, to establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) his protected activity was causally connected to the employer's adverse action. The

employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions. If the employer does so, the plaintiff must demonstrate that the proffered reason is a pretext for forbidden retaliation. The plaintiff always bears the ultimate burden of persuading the trier of fact he was the victim of retaliation. *Rhoads*, 257 F.3d at 392.

Plaintiff objects to the Report's "failure" to address the timing of Plaintiff's termination and protected activity. ECF No. 39 at 11. He asserts he informed Defendant on September 16 his doctor had advised he was unfit for work due to high levels of uric acid, and he was applying for short-term disability. He contends he was terminated on September 22, less than a week after Defendant received his doctor's note supporting his application for short-term disability leave. Despite the provisions cited above, there is no evidence Defendant considered whether Plaintiff's medical condition warranted an exception from the disciplinary policy. Rather, what followed was termination, effective September 16.

The close temporal relationship between the request for short-term disability and termination supports Plaintiff's claim of retaliation. *See Kelly v. Town of Abingdon, Virginia,* 90 F.4th 158, 170 (4th Cir. 2024) ("In retaliation cases, temporal proximity suggests a correlation between an employee's protected action and his employer's adverse reaction."). Here, there was less than a week between Plaintiff's notification to Ms. Diaz and Ms. Klein he was reapplying for short-term disability, and his termination based on an assessment of attendance points contrary to the terms of the written Attendance Policy.

Accordingly, the court finds the temporal proximity between Plaintiff's notification to Ms. Diaz and Ms. Klein he was again applying for short-term disability and the disputed facts relating

to his termination raise genuine issues of material fact such that a jury could find pretext. Therefore, summary judgment is denied on the retaliation claim.

### 5. Conclusion

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, Plaintiff's objections and Defendant's reply, the court declines to adopt the Report and Recommendation and denies Defendant's motion for summary judgment (ECF No. 23).

**IT IS SO ORDERED**.

s/Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>Senior United States District Judge

Columbia, South Carolina
September 30, 2025